IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 05-cv-00218-LTB-MJW

SHAMROCK TAXI OF FORT COLLINS, INC.,

    Plaintiff,

v.

NORTH AMERICAN SPECIALTY INSURANCE COMPANY, a New Hampshire corporation licensed to do business in the State of Colorado,

    Defendant, Counterplaintiff,

NORTHLAND INSURANCE COMPANY, a Minnesota corporation licensed to do business in the State of Colorado,

    Defendant,

SHAMROCK TAXI OF FORT COLLINS, INC.,
SHAMROCK CHARTERS, INC.
WYMOND LEON ESSMAN,
RHONDA JEANNE BURRY,
JAMES BURRY, and
JACQUELINE COTTERELL,

    Counterdefendants.

_____

ORDER
_____

This case is before me on Defendant Northland Insurance Company's ("Northland") Motion for Summary Judgment. Oral argument would not materially assist in determination of the motion. After consideration of the motion, related pleadings, and the case file, I grant the motion for the reasons set forth below.

## I.  Facts and Other Background

This declaratory judgment action arises out of a May 14, 2003 accident (the "Accident") involving a taxi cab owned and operated by Plaintiff Shamrock Taxi of Fort Collins, Inc. ("Shamrock") that claimed the life of Michael James Burry.  As a result of the Accident, Counterdefendants Rhonda Jeanne Burry, James Burry, and Jacqueline Cotterell commenced a wrongful death action in the District Court for Larimer County, Colorado (the "State Court Action").  At issue in this case is the insurance coverage available for the Counterdefendants' claims under liability policies issued by Northland and Defendant and Counterplaintiff North American Specialty Insurance Company ("North American Specialty").

The following undisputed facts and controlling regulatory authority have been derived from the pleadings and exhibits filed in connection with both Northland and North American Specialty's motions for summary judgment.  Unless otherwise noted, all facts relate to the date of the Accident.

1.  Shamrock was the owner and operator of three types of common carrier vehicles: (1) taxi cabs; (2) shuttle vans; and (3) luxury limousines.  All of these vehicles were operated pursuant to Certificates of Public Convenience and Necessity issued by the Public Utilities Commission for the State of Colorado ("the Colorado PUC").  More specifically, Shamrock's taxi cabs were operated pursuant to permit numbers 13043, 29934, 45391, 9256, and 545 and I; its shuttle vans were operated pursuant to permit number 49759; and its limousines were operated pursuant to permit number LL-256. Further, Shamrock's shuttle vans were operated under the name of "Shamrock Taxi of Fort Collins, Inc., d/b/a Shamrock Shuttle" ("Shamrock Shuttle"), and its limousines were operated under the name of "Shamrock Taxi of Fort Collins, Inc., d/b/a

Shamrock Luxury Limousine" ("Shamrock Limousine"). All of Shamrock's transportation services were operated out of the same physical location under the management of Tom Hofman ("Hofman").

    2. The Colorado PUC regulations require common carriers to carry liability insurance for bodily injury and property damage with certain minimum limits "covering all vehicles which may be operated by or for, or which may be under the control of the carrier." 4 Colo. Code Regs. § 723-31-12.1. *See also* 4 Colo. Code Regs. § 723-33, Rule 6307 (establishing same requirements for luxury limousines). As applicable here, these regulations required Shamrock to maintain $500,000 in liability coverage for its taxi cabs and $1,000,000 in liability coverage for its luxury limousines and shuttle vans. *Id.* at § 723-31-12.4 & § 723-33, Rule 6307(b). The Colorado PUC regulations further require common carriers to file a Form E Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance ("Form E") executed by a duly authorized agent of the insurer certifying that they are in compliance with the liability insurance requirements. *Id.* at § 723-31-12.3 & § 723-33, Rule 6307(f). The Form E must be filed with the exact name, trade name, and address as shown in the records of the Colorado PUC. *Id.* at § 723-31-12.3.1 & § 723-33, Rule 6307(g).

    3. North American Specialty issued two liability policies that are at issue in this case. The first of these policies, policy number CEA0000207-00 (the "North American Specialty Taxi Policy"), provided coverage in the amount of $500,000 and specifically listed Shamrock's taxi cabs, including that involved in the Accident, as covered vehicles. It is undisputed that there is coverage for the Counterdefendants' claims under the North American Specialty Taxi Policy, and North American Specialty is currently defending Shamrock in the State Court Action pursuant to

3

this policy.

4. The second North American Specialty policy, policy number CEA0000206-00 (the "North American Specialty Shuttle Policy") was issued to Shamrock Shuttle. This policy provided coverage in the amount of $1,000,000 and specifically listed Shamrock's shuttle vans as covered vehicles. In obtaining the North American Specialty Shuttle Policy, Shamrock sought coverage for those vehicles operated under permit number 49759. The North American Specialty Shuttle Policy did not list the taxi cab involved in the Accident as a covered vehicle, and North American Specialty denies that there is coverage for the Counterdefendants' claims under this policy.

5. Consistent with the Colorado PUC regulations, North American Specialty filed two Form Es with the Colorado PUC . The Form E filed with respect to the North American Specialty Taxi Policy identifies Shamrock as the insured party while the Form E filed with respect to the North American Specialty Shuttle Policy identifies Shamrock Shuttle as the insured party. The Colorado PUC made internal notations on these forms reflecting the certificate numbers applicable to the covered vehicles. Thus, the Form E filed with respect to the North American Specialty Taxi Policy reflects permit numbers 13043, 29934, 45391, 9256, and 545 and I while the Form E filed with respect to the North American Specialty Shuttle Policy reflects permit number 49759.

6. Northland issued one liability policy that is at issue in this case. Specifically, Northland issued policy number TP220404 (the "Northland Policy") to Shamrock Limousine. This policy provided coverage in the amount of $500,000 and specifically listed Shamrock's luxury limousines as covered vehicles. On the application it submitted to obtain the Northland Policy,

Shamrock indicated that its transportation services consisted of limousines only. The Northland Policy did not list the taxi cab involved in the Accident as a covered vehicle, and Northland denies that there is coverage for the Counterdefendants' claims under this policy.

7. Consistent with the Colorado PUC regulations, Northland had filed a Form E with the Colorado PUC under a liability insurance policy ("Policy TP10608") it had previously issued to Shamrock Limousine. This Form E remained in effect unless and until cancelled by 30 days written notice. 4 Colo. Code Regs. § 723-33, Rule 6307(j). Such notice was not given by Northland until after the Accident. Like the Northland Policy, Policy TP10608 did not list the taxi cab involved in the Accident as a covered vehicle.

8. The Form E that Northland filed with respect to Policy TP10608 identified Shamrock Limousine as the insured party. The Colorado PUC made an internal notation on this form reflecting the permit number applicable to the covered vehicles. Thus, the Form E filed by Northland reflects permit number LL-256. Further, the Colorado PUC did not consider the Form E filed by Northland to be related to Shamrock's operation of taxi cabs.

9. Policy TP10608 included a Form F endorsement. This form provides that the Form E filed by Northland effectively amended the policy to provide insurance as required by the Colorado PUC's regulations provided, however, that

> the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

Like the Form E certification filed with respect to Policy TP10608, the Form F endorsement remained in effect unless and until cancelled by 30 days written notice. Such notice was not given by Northland until after the Accident.

10. The taxi cab involved in the Accident was not being operated pursuant to certificate number LL-256 or under the trade name of Shamrock Limousine. Likewise, the taxi cab involved in the Accident did not and could not operate under permit number 49759.

## II. Standard for Review

The very purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324.

### III.  Analysis

Shamrock argues that it has coverage under the Northland Policy for the Counterdefendants' claims based on the Form E Northland filed with respect to Policy TP10608. More specifically, Shamrock argues that by filing this Form E Northland became obligated to cover Shamrock's taxi cabs in addition to its luxury limousines.  I disagree.

In support of its motion, Northland relies on the recent Tenth Circuit case of *Cabs, Inc. v. Hartford Ins. Group,* 151 Fed. Appx. 604 (10th Cir. 2005).  In *Cabs, Inc.,* the common carrier, Cabs, Inc., did business under two trade names: Zone Cabs, Inc. ("Zone Cabs") through which it operated a taxi cab service and Centennial Sedans, Inc. ("Centennial") through which it operated a luxury limousine service.  These two entities maintained different physical addresses and management, but operated pursuant to the same permit issued by the Colorado PUC.

The litigation before the Tenth Circuit arose after one of the taxi cabs operated under the name of Zone Cabs was involved in an accident.  Defendant Hartford Insurance Group ("Hartford") had issued a liability policy that initially named "Cabs, Inc., d/b/a Centennial" as the insured and provided coverage for "any auto" owned and operated by the named insured.  When Centennial's insurance broker attempted to file a Form E for Hartford's policy naming the insured as "Cabs, Inc., d/b/a Centennial" with the Colorado PUC, however, it was rejected on the basis that the permit issued to Cabs, Inc. also listed Zone Cabs as a trade name and the Colorado PUC regulations required the exact same name to appear on the Form E.  Accordingly, Centennial's insurance broker submitted a new Form E identifying "Cabs, Inc., d/b/a Zone Cabs and/or Centennial" as Hartford's insured.  Hartford then amended its policy to reflect this same entity as its insured but did not otherwise alter its policy, and Cabs, Inc. continued to maintain other

liability insurance for Zone Cabs.

When Zone Cabs and another insurer sought reimbursement from Hartford for costs associated with the taxi cab accident, Hartford sought to reform its policy to reflect that it did not provide coverage for Zone Cabs' taxi cabs. In affirming the district court's ruling granting Hartford's request, the Tenth Circuit concluded, in part, that Hartford and Centennial never intended to insure Zone Cabs' taxi cabs. This conclusion was supported by testimony from Centennial's manager, Hartford's sales representative, and Centennial's insurance broker. Notably, Hartford's sales representative testified that coverage had only been requested for limousines, not taxi cabs.

Although the facts and procedural posture of *Cabs, Inc.* differ in many respects from the present case, this authority is nonetheless instructive on a few key points. Most importantly, *Cabs, Inc.* supports Northland's argument that the filing of a Form E does not obligate an insurer to provide coverage for other vehicles operated by the common carrier under a different name and, in this case, permit number. To conclude otherwise would render the ordered reformation of the insurance contract at issue in *Cabs, Inc.* meaningless.

Here, the Form E that Northland filed with the Colorado PUC expressly identified Shamrock Limousine as its insured. The taxi cab involved in the Accident was not being operated under this trade name or under the permit issued for the operation of Shamrock's luxury limousines. Based on its filing of the Form E with respect to Policy TP10608, Northland may be obligated to extend coverage to any vehicle being operated by Shamrock under the trade name of Shamrock Limousine and permit number LL-256 regardless of whether the particular vehicle was specifically listed under Northland's policy. There is simply no authority, however, to support an

extension of the coverage under the Northland Policy to the taxi cab involved in the Accident based on the filing of this form. Moreover, such an extension is unwarranted in view of the fact that Shamrock had procured other insurance which expressly covered the taxi cab in question. *See Nat'l Cas. Co. v. Lane Exp., Inc.* 998 S.W.2d 256, 263 (Tex. App. 1999) (filing of Form E has the effect of making insurer "an insurer of last resort when no other insurance would otherwise be available"). *See also Adams v. Royal Indemnity Co.,* 99 F.3d 964, 968 (10th Cir. 1996) (purpose of similar endorsement required under the regulations of the Interstate Commerce Commission is to protect the public from uninsured regulated vehicles and to prevent the risk that, through inadvertance or otherwise, some vehicles may be left off the policy to the public's detriment).

Shamrock also argues that there may be coverage under the Northland Policy for the Counterdefendants' claims based on a purported ambiguity in the parties' intentions regarding this policy. I find this argument to be equally unpersuasive in view of Shamrock's reliance on extrinsic evidence to establish this purported ambiguity. Resort to such evidence is only appropriate if the terms of the Northland Policy are ambiguous regarding the coverage provided under this policy. *See Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo. 1984) ("It is axiomatic that in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence"). Shamrock has failed to identify any specific terms of the Northland Policy that are ambiguous and has therefore failed to raise a genuine issues of material fact as to the parties' intentions.

Having concluded that there is no coverage under the Northland Policy for the taxi cab involved in the Accident, it is unnecessary for me to address the remaining argument in

Northland's motion that it would be entitled to reimbursement from Shamrock pursuant to the Form F issued in connection with Policy TP10608 if such coverage existed.

Based on the foregoing, IT IS ORDERED that Northland's Motion for Summary judgment [Doc # 66] is GRANTED that the Form E that Northland filed with respect to the Northland Policy has no application to claims arising out of the Accident.

Dated: March  22 , 2006 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, CHIEF JUDGE